# Exhibit A

**CREDIT AND GUARANTY AGREEMENT**

dated as of December 21, 2017

among

**RTI MERGER SUB, LLC,**
as Merger Sub and the initial Borrower,

**RUBY TUESDAY, INC.,**
as the surviving entity of the Acquisition
and thereafter as a Borrower,

**CERTAIN SUBSIDIARIES OF RUBY TUESDAY, INC.
PARTY HERETO FROM TIME TO TIME,**
as Borrowers,

**RTI HOLDING COMPANY, LLC,**
as Holdings and Borrower Representative,

**UPON CONSUMMATION OF THE ACQUISITION
CERTAIN OTHER CREDIT PARTIES
PARTY HERETO FROM TIME TO TIME,**
as Guarantors,

**THE LENDERS PARTY HERETO FROM TIME TO TIME,**
as Lenders,

and

**GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P.,**
as Administrative Agent, Collateral Agent and Syndication Agent.

---

$127,500,000 Senior Secured Credit Facilities

---

(f) Certain Calculations. With respect to any period during which an Asset Sale has occurred (each, a "**Subject Transaction**"), for purposes of determining compliance with the financial covenants set forth in this Section 6.8, Consolidated Adjusted EBITDA and the components of Consolidated Fixed Charges shall be calculated with respect to such period on a pro forma basis (including pro forma adjustments mutually agreed to by Administrative Agent and Borrower Representative) using the historical audited financial statements sold or to be sold and the consolidated financial statements of each Credit Party and its Subsidiaries which shall be reformulated as if such Subject Transaction, and any Indebtedness incurred or repaid in connection therewith, had been consummated or incurred or repaid at the beginning of such period (and assuming that such Indebtedness bears interest during any portion of the applicable measurement period prior to the relevant acquisition at the weighted average of the interest rates applicable to outstanding Loans incurred during such period).

**6.9. Fundamental Changes; Disposition of Assets; Acquisitions.** No Credit Party shall, nor shall it permit any of its Subsidiaries to, (i) enter into any transaction of merger or consolidation, or liquidate, wind-up or dissolve itself (or suffer any liquidation or dissolution), or convey, sell, lease or sublease (as lessor or sublessor), (ii) exchange, transfer or otherwise dispose of, in one transaction or a series of transactions, all or any part of its business, assets or property of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible, whether now owned or hereafter acquired, or (iii) acquire by purchase or otherwise (other than purchases or other acquisitions of inventory, materials and equipment and Capital Expenditures in the ordinary course of business to the extent otherwise permitted hereunder) the business, property or fixed assets of, or Capital Stock or other evidence of beneficial ownership of, any Person or any division or line of business or other business unit of any Person, except:

(a) any Credit Party may be merged with or into any other Credit Party (other than Holdings), or be liquidated, wound up or dissolved, or all or any part of its business, property or assets may be conveyed, sold, leased, transferred or otherwise disposed of, in one transaction or a series of transactions, to another Credit Party (other than Holdings); provided, in the case of such a merger involving RTI, RTI shall be the continuing or surviving Person;

(b) sales or other dispositions of assets that do not constitute Asset Sales;

(c) Planned Asset Sales;

(d) Permitted Foreign Sales;

(e) disposals of obsolete or worn out property;

(f) the dissolution of a Credit Party (other than Holdings or RTI) in connection with the permanent, final closure of a Closed Restaurant and/or the transfer of any remaining assets, licenses, agreements or leases used solely in any Closed Restaurant, in any case, solely to the extent the continued operation of such any Restaurant is no longer desirable in the good faith judgment of the senior management of Holdings;

(g) Permitted Sale Leaseback Transactions;

(h) Investments made in accordance with Section 6.7;

(i) Asset Sales that do not (A) consist in any manner of (w) Planned Asset Sales (or any assets which could otherwise be the subject of a Planned Asset Sale), (x) Permitted Foreign Sales (or any assets, including Capital Stock, which could otherwise be the subject of a Permitted Foreign Sale), (y) Permitted Sale-Leaseback Transactions or (z) the sale or transfer of any operating Restaurant (regardless of the form of the transaction) or (B) consist of a proposed sale of the headquarters location of RTI in Maryville, Tennessee, in any case, in an amount not to exceed $5,000,000 in the aggregate for all such transactions during the term hereof;

(j) Asset Sales with respect to certain Real Estate Assets of the Credit Parties for which a binding purchase or sale agreement has been executed by the applicable Credit Party prior to the Closing Date but which Asset Sales are consummated after the Closing Date, in any case, solely in accordance with the terms and conditions of those agreements set forth on Schedule 6.9(j) (without further amendment by the parties thereto); provided, the Net Asset Sale Proceeds thereof are applied by the Credit Parties in accordance with Section 2.13(a)(i) hereof (as if such Asset Sales constituted Permitted Fee Owned Property Sales hereunder); and

(k) Asset Sales with respect to certain liquor licenses of the Credit Parties for which a binding purchase or sale agreement has been executed by the applicable Credit Party prior to the Closing Date but which Asset Sales are consummated after the Closing Date, in any case, solely in accordance with the terms and conditions of those agreements set forth on Schedule 6.9(k) (without further amendment by the parties thereto); provided, the Net Asset Sale Proceeds thereof are applied by the Credit Parties in accordance with Section 2.13(a)(ii) hereof.

Subject to compliance with Section 2.13, and at the sole cost and expense of the Credit Parties, promptly upon the written request of Borrower Representative, Collateral Agent shall deliver to the applicable Credit Party, such documents and instruments reasonably necessary to release any Liens securing the interests of the Secured Parties that have attached to any Collateral that has been sold in compliance with this Section 6.9, including the termination of any Mortgage encumbering the Collateral so sold in compliance with this Section 6.9. For the avoidance of doubt and notwithstanding the foregoing, no Credit Party shall assign any purchase option or similar right arising under any lease or similar agreement (whether to NRD RT 30, LLC pursuant to the Sale Leaseback Transaction Documents with NRD RT 30, LLC or otherwise), in any case, without the prior written consent of Requisite Lenders (which consent, in any case with respect to which the conditions of a Permitted Fee Owned Property Sale are otherwise satisfied (but for any such assignment), shall not be unreasonably withheld, conditioned or delayed).

**6.10. Disposal of Subsidiary Interests.** Except for any sale of all of its interests in the Capital Stock of any of its Subsidiaries in compliance with the provisions of Section 6.9, no Credit Party shall, nor shall it permit any of its Subsidiaries to, (a) directly or indirectly sell, assign, pledge or otherwise encumber or dispose of any Capital Stock of any of its Subsidiaries, except to qualify directors if required by applicable law, or as required under applicable law to permit such Credit Party to secure a liquor license; or (b) permit any of its Subsidiaries directly or indirectly to sell, assign, pledge or otherwise encumber or dispose of any Capital Stock of any of its Subsidiaries, except to another Credit Party (subject to the restrictions on such disposition otherwise imposed hereunder), or to qualify directors if required by applicable law, or as required under applicable law to permit such Credit Party to secure a liquor license.

Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith, and each Credit Party hereby waives, releases and agrees not to sue upon any such claim or any such damages, whether or not accrued and whether or not known or suspected to exist in its favor.

**10.4. Set-Off.** In addition to any rights now or hereafter granted under applicable law and not by way of limitation of any such rights, upon the occurrence of any Event of Default each Lender, Issuing Bank and their respective Affiliates are hereby authorized by each Credit Party at any time or from time to time subject to the consent of Administrative Agent (such consent not to be unreasonably withheld or delayed), without notice to any Credit Party or to any other Person (other than Administrative Agent), any such notice being hereby expressly waived, to set off and to appropriate and to apply any and all deposits (general or special, including Indebtedness evidenced by certificates of deposit, whether matured or unmatured, but not including trust accounts (in whatever currency)) and any other Indebtedness at any time held or owing by such Lender to or for the credit or the account of any Credit Party (in whatever currency) against and on account of the obligations and liabilities of any Credit Party to such Lender or Issuing Bank hereunder, the Letters of Credit and participations therein and under the other Credit Documents, including all claims of any nature or description arising out of or connected hereto, the Letters of Credit and participations therein or with any other Credit Document, irrespective of whether or not (a) such Lender shall have made any demand hereunder, (b) the principal of or the interest on the Loans or any amounts in respect of the Letters of Credit or any other amounts due hereunder shall have become due and payable pursuant to Section 2 and although such obligations and liabilities, or any of them, may be contingent or unmatured or (c) such obligation or liability is owed to a branch or office of such Lender or Issuing Bank different from the branch or office holding such deposit or obligation or such Indebtedness.

**10.5. Amendments and Waivers.**

(a) Requisite Lenders' Consent. Subject to Sections 10.5(b) and 10.5(c), no amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall in any event be effective without the written concurrence of Administrative Agent and the Requisite Lenders; provided, (x) the Fee Letter may be amended, modified, or rights or privileges thereunder waived, in a writing executed only by (i) the parties thereto and (ii) to the extent TCW is still a Lender hereunder, TCW and (y) the Warrants may be amended, modified, or rights or privileges thereunder waived, in a writing executed only by Holdings and all holders of the Warrants.

(b) Affected Lenders' Consent. Without the written consent of each Lender (other than a Defaulting Lender) that would be affected thereby, no amendment, modification, termination, or consent shall be effective if the effect thereof would:

(i) extend the Maturity Date;

(ii) waive, reduce or postpone any scheduled repayment (but not prepayment);

(iii)     extend the stated expiration date of any Letter of Credit beyond the Revolving Commitment Termination Date;

(iv)     reduce the rate of interest on any Loan (other than any waiver of any increase in the interest rate applicable to any Loan pursuant to Section 2.9) or any fee payable hereunder;

(v)     extend the time for payment of any such interest or fees;

(vi)     reduce the principal amount of any Loan or any reimbursement obligation in respect of any Letter of Credit;

(vii)     amend, modify, terminate or waive any provision of Section 2.14(a), this Section 10.5(b) or Section 10.5(c);

(viii)     amend the definition of "Requisite Lenders" or "Pro Rata Share"; provided, with the consent of Administrative Agent and the Requisite Lenders, additional Credit Extensions may be included in the determination of "Requisite Lenders" or "Pro Rata Share" on substantially the same basis as the Term Loan Commitments, the Term Loans, the Revolving Commitments and the Revolving Loans are included on the Closing Date;

(ix)     release all or substantially all of the Collateral or all or substantially all of the Guarantors from the Guaranty, in each case, except as expressly provided in the Credit Documents; or

(x)     consent to the assignment or transfer by any Credit Party of any of its rights and obligations under any Credit Document.

(c)     Other Consents.  No amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall:

(i)     increase any Revolving Commitment of any Lender over the amount thereof then in effect without the consent of such Lender; provided, no amendment, modification or waiver of any condition precedent, covenant, Default or Event of Default shall constitute an increase in any Revolving Commitment of any Lender;

(ii)     amend, modify, terminate or waive any obligation of Lenders relating to the purchase of participations in Letters of Credit as provided in Section 2.3(e) without the written consent of Administrative Agent and Issuing Bank;

(iii)     amend, modify, terminate or waive any provision of Section 9 as the same applies to any Agent, or any other provision hereof as the same applies to the rights or obligations of any Agent, in each case without the consent of such Agent; or

129

(iv) amend, modify or waive any provision of this Agreement (including Section 2.15(e)) or any other Credit Document so as to alter the ratable treatment of Obligations arising under the Credit Documents and Obligations arising under Interest Rate Agreements or the definition of "Lender Counterparty," "Interest Rate Agreement," "Obligations" or "Secured Parties," in each case in a manner adverse to any Lender Counterparty without the written consent of any such Lender Counterparty.

(d) <u>Execution of Amendments, etc.</u> Administrative Agent may, but shall have no obligation to, with the concurrence of any Lender, execute amendments, modifications, waivers or consents on behalf of such Lender. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on any Credit Party in any case shall entitle any Credit Party to any other or further notice or demand in similar or other circumstances. Any amendment, modification, termination, waiver or consent effected in accordance with this Section 10.5 shall be binding upon each Lender at the time outstanding, each future Lender and, if signed by a Credit Party, on such Credit Party.

**10.6. Successors and Assigns; Participations.**

(a) <u>Generally</u>. This Agreement shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of Lenders. No Credit Party's rights or obligations hereunder nor any interest therein may be assigned or delegated by any Credit Party without the prior written consent of all Lenders. Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, Indemnitee Agent Parties under Section 9.6, Indemnitees under Section 10.3, their respective successors and assigns permitted hereby and, to the extent expressly contemplated hereby, Affiliates of each of the Agents and Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b) <u>Register</u>. The Credit Parties, Administrative Agent and Lenders shall deem and treat the Persons listed as Lenders in the Register as the holders and owners of the corresponding Commitments and Loans listed therein for all purposes hereof, and no assignment or transfer of any such Commitment or Loan shall be effective, in each case, unless and until an Assignment Agreement effecting the assignment or transfer thereof shall have been delivered to and accepted by Administrative Agent and recorded in the Register as provided in Section 10.6(e). Prior to such recordation, all amounts owed with respect to the applicable Commitment or Loan shall be owed to the Lender listed in the Register as the owner thereof, and any request, authority or consent of any Person who, at the time of making such request or giving such authority or consent, is listed in the Register as a Lender shall be conclusive and binding on any subsequent holder, assignee or transferee of the corresponding Commitments or Loans.

(c) <u>Right to Assign</u>. Each Lender shall have the right at any time to sell, assign or transfer all or a portion of its rights and obligations under this Agreement, including all or a portion of its Commitment or Loans owing to it or other Obligations (<u>provided</u>, <u>however</u>, each such assignment shall be of a uniform, and not varying, percentage of all rights and obligations under and in respect of any Loan and any related Commitments):