UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BNA ASSOCIATES, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:21-cv-00481 |
| GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

BNA Associates ("BNA") sued Goldman Sachs Specialty Lending Group ("Goldman") for intentional interference with business relations ("IIBR") and violations of trade secret statutes after Goldman refused to consent to the sale of a leasehold interest to BNA. Goldman has moved to dismiss BNA's lawsuit under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 56). The Court will grant the motion because BNA has failed to state any claim upon which relief can be granted.

### I.  BACKGROUND[1]

BNA is a Nashville-based real estate development company. (Doc. No. 53 ¶ 7). Around January 2020, BNA became interested in purchasing RT Lodge,[2] which is a hotel and resort property located on the campus of Maryville College ("Maryville") near the great Tennessee Smoky Mountains. (Id. ¶¶ 1, 11, 18). RT Lodge belonged to Ruby Tuesday, Inc. ("RTI"). (Id. ¶ 13).

---

[1] The Court accepts the facts pled by BNA as true at this stage, as is required. Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). BNA complains that Goldman's briefs improperly cite to materials outside the pleadings. (Doc. No. 59 at 9–12). The Court notes that it does not rely upon those materials in this Memorandum Opinion and Order.

[2] Technically, BNA sought to purchase a leasehold interest in the lodge. (Doc. No. 53 ¶ 1). But for ease of reference the Court will refer to that interest simply as "RT Lodge."

RTI's ability to sell RT Lodge was subject to restrictions. (Id. ¶¶ 20, 26). Maryville and Goldman had to consent to any sale. (Id.). Goldman's approval was required because RTI previously pledged its interest in RT Lodge "as security for loan(s) from Goldman." (Id. ¶ 26).

In March 2020, BNA and RTI reached a tentative agreement for the sale of RT Lodge for $5,250,000. (Id. ¶ 22). They delayed the planned purchase due to issues associated with the COVID-19 pandemic. (Id. ¶ 23). However, no later than July 2020, BNA and RTI contacted Goldman hoping to obtain consent for the sale. (Id. ¶ 27).

Goldman did not immediately consent. (Id.). Instead, it contacted Maryville and expressed an interest in acquiring RT Lodge for itself. (Id. ¶ 28). Maryville was not receptive to the idea. (Id. ¶ 29). On August 14, 2020, Goldman recorded a deed of trust against RTI's interest in RT Lodge. (Id. ¶ 30).

Two weeks later, BNA and RTI executed an amended agreement for the sale of RT Lodge. (Id. ¶ 31). Goldman refused to provide consent. (Id. ¶¶ 33, 40). As a result, RTI terminated its agreement with BNA pursuant to a provision of the agreement that acknowledged the sale could not occur without Goldman's approval. (Id. ¶ 40).

BNA subsequently filed a complaint against Goldman in state court, and the action was removed to this Court on June 22, 2021. (Doc. No. 1). BNA filed an amended complaint on January 21, 2022 ("Amended Complaint") (Doc. No. 53). The Amended Complaint alleges Goldman's actions concerning RT Lodge constituted IIBR (id. ¶¶ 43–49), violated the Defend Trade Secrets Act ("DTSA") (id. ¶¶ 50–60), and ran afoul of the Tennessee Uniform Trade Secrets Act ("TUTSA") (id. ¶¶ 61-68). Goldman moved to dismiss the Amended Complaint on February 11, 2022. (Doc. No. 56). The motion has been fully briefed. (Doc. Nos. 57, 59, 60).

2

## II. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a complaint must meet Rule 8(a)(2)'s pleading standard. See Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). Rule 8(a)(2) requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Taken together, the "factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Ashcroft 556 U.S. at 678).

In reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016). Then, the court must "take all of those facts and inferences" and determine whether they "plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). If the complaint's claim for relief "is at all plausible (beyond a wing and a prayer)," then the court must deny the motion to dismiss and permit the case to proceed. Id.

## III. ANALYSIS

### A. The Amended Complaint Fails to State an IIBR Claim.

BNA has not stated a claim for IIBR. To succeed in an IIBR claim, a plaintiff must demonstrate "(1) an existing business relationship with specific third parties or a prospective

3

relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (citation and quotation omitted). The parties dispute whether BNA has adequately pled the fourth element. (Doc. No. 57 at 13; Doc. No. 59 at 12–19). BNA concedes it has not alleged "improper motive." (Doc. No. 59 at 2). So, the parties' disagreement turns on whether BNA has sufficiently alleged "improper means." See Trau-Med, 71 S.W.3d at 701. The Court finds it has not.

Tennessee courts have not provided a "precise or all-encompassing definition of 'improper.'"[3] Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 176 (Tenn. Ct. App. 2007). However, they have provided "guidance." Id. Generally, improper means are means that "are illegal, independently tortious, or that violate an established standard of a trade or profession." Id. Examples include "violence, threats, bribery, unfounded litigation, fraud, misrepresentation, defamation, duress, undue influence, misuse of confidential information, or breach of a fiduciary duty." Id.

Although Tennessee courts have not provided an exhaustive list of practices that fall under the "improper means" category, they have identified at least one practice that does *not* fall within that category: the "refusal to deal." Id. at 172, 178. "[I]n Tennessee, a person has the freedom or

---

[3] Federal courts "apply state substantive law" where, as here, their "jurisdiction is premised on diversity of citizenship." Shropshire v. Laidlaw Transit, Inc., 550 F.3d 570, 571 (6th Cir. 2008). When "the state's highest court has not ruled on an issue," federal courts "must ascertain the state law from all relevant data, including the state's intermediate court decisions." Herrera v. Churchill McGee, LLC, 680 F.3d 539, 544 (6th Cir. 2012) (citations and quotations omitted).

4

unfettered discretion to do business or not to do business with whomever he or she chooses for any reason that does not violate the law." Id. at 178. This freedom is sometimes referred to as the "dealer's privilege." Id. at 185. A party's exercise of the dealer's privilege does not constitute "improper means" for the purposes of an IIBR claim. Id. at 172 ("This case involves questions of liability under the recently recognized tort of intentional interference with existing or prospective business relationships. Because a necessary element of that tort is 'improper motive' or 'improper means,' and because refusal to deal is not improper but is, instead, privileged, we reverse the judgment against the supplier."). Indeed, the Tennessee Court of Appeals has stressed that "[t]he elements of [an IIBR claim] should not be interpreted or applied in a way that converts the tort into one for a 'wrongful decision not to contract.'" Id. at 178.

BNA's IIBR claim fails because the "improper means" it alleges amount to Goldman's choice to exercise the dealer's privilege. This is clear from the plain text of the Amended Complaint. It alleges Goldman's "refus[al] to consent" to the sale of RT Lodge was an improper mean. (Doc. No. 53 ¶¶ 46–47). But that refusal was merely a decision not to deal with BNA. Goldman had a preexisting legal interest in RT Lodge as RTI's secured lender. (Doc. No. 53 ¶ 26). It apparently did not want to alter the status quo by releasing RT Lodge to BNA. That is perfectly acceptable under the dealer's privilege. See McCormick, 247 S.W.3d at 178.

BNA's counterarguments are without merit. BNA contends that the *competitor's* privilege does not protect Goldman because it only protects true "competitors" and "only applies to the improper motive prong of [IIBR claims]." (Doc. No. 59 at 23). That argument is a red herring. The competitor's privilege is "a different privilege" than the dealer's privilege. McCormick, 247 S.W.3d at 185. The latter provides ample protection from IIBR claims whose "sole basis" is a defendant's refusal to deal. Id. at 177. To demonstrate improper means, a plaintiff must show an

5

impropriety that extends *beyond* the defendant's refusal to deal. Id. at 178 ("Where we draw our distinction is under the fourth element of the tort that requires Mohawk to have acted improperly before liability can attach. We find a supplier has a privilege that allows it to refuse to sell and that such a refusal to deal is not improper.").

BNA has not alleged any such impropriety. BNA claims Goldman used improper means because it "misused inside or confidential information, violated an established standard of the lending profession, and engaged in unethical conduct that constituted sharp dealing and overreaching." (Doc. No. 53 ¶ 48). First, accepting BNA's facts as true, the Court disagrees that Goldman misused confidential information for the reasons discussed in Section III.B, below. Second, the dealer's privilege forecloses BNA's argument that Goldman employed improper means by violating an established standard of the lending profession.[4] Third, Goldman's actions that BNA implies are unethical, which appear to reflect Goldman's interest in either maintaining the status quo or acquiring RT Lodge for itself, seem well within Goldman's rights as a secured lender. BNA admits that RTI pledged RT Lodge "as security for loan(s) from Goldman" long before BNA became interested in the lodge. (Id. ¶ 26). It further admits Goldman had contracted for the right to prevent any sale of RT Lodge by RTI. (See id. ¶ 40). Goldman's exercise of its contractual rights bear no resemblance to the types of unethical behaviors that Tennessee courts

---

[4] BNA contends that "[i]t is an established standard of the lending profession" that "if the seller (and, by extension, the secured lender) is to receive fair value" for a transaction, then the "lender is to consent to the transaction." (Doc. No. 53 ¶ 35). Assuming this is an established practice, violating it in the present circumstances cannot constitute improper means. A contrary finding would destroy the dealer's privilege by requiring secured lenders to approve transactions with third parties with whom they prefer not to deal. (BNA's argument appears to assume that violating *any* standard of a profession constitutes employing improper means regardless of the circumstances. But as BNA's own authority makes clear, "a determination of whether a defendant acted 'improperly' . . . is dependent on the particular facts and circumstances of a given case." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002).)

have held constitute improper means. E.g., McCormick, 247 S.W.3d at 184 (defaming a competitor by telling others that he "dealt and used illegal substances, was in the mob, cheated his customers, slept with employees, and was having financial difficulties" counted as "improper means"). Absent allegations of such behaviors, BNA simply cannot recover for IIBR. Id. at 178 (dealer's privilege prevented liability where the "*act* that caused [plaintiff] damage was [a defendant's] refusal to deal, not any other action by [the defendant] such as defamation").

Accepting BNA's alleged facts as true and construing the Amended Complaint in the light most favorable to BNA, the Court finds BNA has failed to state an IIBR claim.

B. The Amended Complaint Fails to State a TUTSA Claim.

BNA also has not stated a claim under the TUTSA. Under the TUTSA, "the elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff." PartyLite Gifts, Inc. v. Swiss Colony Occasions, No. 3:06-CV-170, 2006 WL 2370338, at *3 (E.D. Tenn. Aug. 15, 2006). According to BNA, the "amount that [it] was prepared to pay for . . . RT Lodge" is a trade secret that Goldman misappropriated to BNA's detriment. (Doc. No. 53 ¶ 61–68). The Court disagrees.

BNA's TUTSA claim fails because BNA's proposed purchase price for RT Lodge ("Proposed Price") does not meet the definition of a trade secret. To qualify as a trade secret under the TUTSA, information must satisfy two requirements. Tenn. Code Ann. § 47-25-1702. First, it must "[d]erive[] independent economic value . . . from not being generally known to . . . persons who can obtain economic value from its disclosure or use." Id. Second, it must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Id.

Here, BNA did not make reasonable efforts to maintain the secrecy of the Proposed Price.

7

Case 3:21-cv-00481   Document 65   Filed 05/09/22   Page 7 of 9 PageID #: 1254

Indeed, the exhibits to the Amended Complaint indicate the opposite. BNA and RTI's amended asset purchase and sale agreement, which contains the Proposed Price, does not restrict RTI from sharing or using the Proposed Price in any manner. (Doc. No. 48-6). Although the agreement has a confidentiality provision, that provision only restricts *BNA* from disclosing certain information. (Id. at 14). It does not restrict RTI at all. (Id.). Under these circumstances, the Court finds the Proposed Price was not subject to reasonable efforts to maintain its secrecy. Accordingly, the Proposed Price is not a trade secret. Tenn. Code Ann. § 47-25-1702.

BNA's contrary argument is unavailing. BNA claims it took reasonable efforts to maintain the secrecy of the Proposed Price because it required prospective investors to keep that information secret and only disclosed the price to its employees on a need-to-know basis. (Doc. No. 59 at 27). Accepting these allegations as true, they do not render the Proposed Price a trade secret given that BNA disclosed the price to a third party without restriction. Care Servs. Mgmt., LLC v. Premier Mobile Dentistry of VA, LLC, No. 3:17-CV-01095, 2020 WL 5797974, at *4 (M.D. Tenn. Sept. 29, 2020) ("documents shared with third parties" did not "become 'trade secrets' simply because . . . employees or others agree[d] not to disclose them"). BNA has not stated a TUTSA claim.

C. The Amended Complaint Fails to State a DTSA Claim.

BNA also has not stated a claim under the DTSA. The elements of a DTSA claim are "largely the same" as the elements of a TUTSA claim. Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC, No. 3:19-CV-00966, 2019 WL 5964531, at *5 (M.D. Tenn. Nov. 13, 2019). Like under the TUTSA, for information to count as a trade secret under the DTSA, the information's owner must have "taken reasonable measures to keep [the] information secret." 18 U.S.C. § 1839. As noted, BNA did not take reasonable measures to keep the Proposed Price secret, even accepting the allegations in the Amended Complaint as true. Accordingly, BNA's DTSA

claim fails for the same reasons that its TUTSA claim fails.

### IV. CONCLUSION

For the foregoing reasons, Goldman's Motion to Dismiss (Doc. No. 56) is **GRANTED** and this case is **DISMISSED**.

This is a final order. The Clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE